[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an administrative appeal from a decision of R.I. Department of Human Services (DHS). Jurisdiction in this Court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS AND TRAVEL
Jean Chase (plaintiff) has been a Food Stamp Program recipient for 15 years. On August 18, 1989 plaintiff completed a Statement of Need in which plaintiff listed herself and her two (2) minor children as members of her household. This Statement also informed plaintiff of her continuing obligation to report any changes in the information supplied in the Statement of Need within ten (10) days of any such change.
On August 28, 1989, ten days later, plaintiff married Frank R. Chase Jr. in Northfield, New Hampshire. Shortly thereafter, Mr. Chase moved into plaintiff's home located at 174 Morin Heights Boulevard, Woonsocket, Rhode Island. On November 6, 1989, after Mr. Chase had moved out of plaintiff's residence, he contacted DHS and informed them of his marriage to plaintiff. At a November 7, 1989 interview plaintiff admitted that she married Mr. Chase on August 28, 1989 and that Mr. Chase moved out of her residence sometime near the end of September 1989. DHS subsequently charged plaintiff with intentionally violating the Food Stamp Program by failing to timely report her August 28th marriage to Mr. Chase.
An administrative hearing was held on September 4, 1990 on the issue of whether plaintiff intentionally violated the Food Stamp Program. At the hearing, plaintiff admitted that she knew of and understood her obligation to inform DHS of any changes in her household. Plaintiff argued however that during the time frame in question she had a severe drug and alcohol problem. Therefore, according to plaintiff, her state of mind was such that she could not form the requisite intent to violate the Food Stamp Program. At plaintiff's request, the record of the administrative hearing remained open for the submission of memoranda and additional evidence. Plaintiff subsequently submitted a memorandum in support of her defense along with a letter from Ghazi Accaoui, M.D. dated September 5, 1990. DHS submitted a reply memo.
Dr. Accaoui's letter stated that plaintiff had been a patient at the State's Detoxification Unit from July 24, 1989 to July 28, 1989. Dr. Accaoui also confirmed that plaintiff had an alcohol and drug problem during her time at the Detoxification Unit and that she was "not capable of appreciating the consequences of her actions at the time she was admitted." Although Dr. Accaoui did not have any contact with plaintiff subsequent to July 28, 1989, he advised plaintiff to enter long-term care.
On October 23, 1990, James J. Dillon, Jr., the Administrative Disqualification Hearing Officer, issued a written decision finding that plaintiff had committed an intentional food stamp program violation. As a consequence of this finding, plaintiff was disqualified from participation in the food stamp program for six months.
On appeal, plaintiff contends that DHS failed to provide clear and convincing evidence that plaintiff's failure to report her marriage was an intentional rather than an inadvertent violation of the food program rules. DHS maintains that there is competent evidence on the record to support the decision that plaintiff committed an intentional food stamp program violation.
STANDARD OF REVIEW
This Court's review of DHS's decision is governed by Section42-35-15(g) of R.I. General Laws which provides in part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency decision this court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence.Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1209 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Rather, this Court must confine itself to review of the record to determine if "legally competent evidence" exists to support the agency decision. Turner v.Department of Employment Security, 479 A.2d 740, 742 (R.I. 1984); Berberian v. Department of Employment Security,414 A.2d 480 (R.I. 1980). Thus, the court will reverse factual conclusions of administrative agencies only when they are "totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981). However, this court "may freely review questions of law to determine what the law is and its applicability to the facts." Chenot v.Bordeleau, 561 A.2d 891, 893 (R.I. 1989); Carmody, 509 A.2d at 458.
DHS DECISION
Under the DHS Food Stamp Program Policy the criteria for determining whether an intentional program violation has occurred is as follows:
 The hearing authority must base the determination of intentional program violation on clear and convincing evidence which demonstrates that the household member(s) committed, and intended to commit, intentional program violation as defined below:
 Made a false or misleading statement, or misrepresented, concealed or withheld facts; or,
 Committed any act that constitutes a violation of the Food Stamp Act, the Food Stamp Program regulations, or any State statute relating to the use, presentation, transfer, acquisition, receipt or possession of food stamp coupons or ATP cards. Food stamp Policy Manual, Section 1034.15.
The burden, therefore, is on DHS to present clear and convincing evidence not only that a program violation has occurred but that the participant intended to commit the same. Plaintiff contends that DHS failed to produce any evidence of plaintiff's intent to violate the program. After review of the record, however, the Court is satisfied that DHS met its burden at the September 9, 1990 hearing.
The record before the Court contains ample evidence to support the hearing officer's finding that plaintiff committed an intentional program violation. First, plaintiff signed a Statement of Need just ten (10) days prior to her marriage. This statement informs plaintiff of her obligation to inform DHS of any changes in her household. In addition, plaintiff's sworn testimony confirmed that at the time she signed the Statement of Need she was aware of and understood her obligation to report any changes to DHS. Furthermore, plaintiff admitted that despite knowledge of this obligation, she did not report her marriage to DHS.
Plaintiff, however, maintains that her failure to report her marriage to DHS was inadvertent rather than intentional. According to plaintiff her judgment was so clouded by alcohol and drugs that she was unable to appreciate the consequences of her actions. The record, however, supports the hearing officer finding that plaintiff's testimony on this matter was not credible. As the hearing officer reasoned in his decision, plaintiff was able to clearly relate all of the circumstances surrounding her marriage. For example, she testified to driving to New Hampshire in Mr. Chase's car. She remembered that Mr. Chase drove because plaintiff did not know how to drive a standard. She also remembered that they stayed with Mr. Chase's cousin and "partied" for three (3) days. They bought about four (4) cases of beer before they went to New Hampshire and purchased cocaine from a friend of Mr. Chase's cousin in New Hampshire. Plaintiff was also able to remember that "the lady that married us wanted us to wait."
In addition, the hearing officer specifically noted that a mere ten (10) days prior to her marriage plaintiff made no representation at the DHS interview that she was incapable of providing for the needs of her children because of chemical abuse. Furthermore, plaintiff made no representation that she was under "any pressure, duress, or undue influence that would have invalidated (her) understanding of (her) rights and responsibilities" prior to signing the statement. In fact, plaintiff specifically testified that she fully understood her rights and responsibilities. Mindful that, with regard to the credibility of witnesses, this Court may not substitute its judgment for that of the administrative agency, Carmody, 509 A.2d at 458, this Court is satisfied that there is competent evidence to support the hearing officer's dismissal of plaintiff's testimony as not credible.
Plaintiff also points to Dr. Accaoui's September 5, 1990 letter to support her argument that she was incapable of forming the requisite intent to violate the program. However, plaintiff was not under Dr. Accaoui's care during the time of the alleged violation, therefore, Dr. Accaoui's letter has little evidentiary value. Dr. Accaoui treated plaintiff for four (4) days, from July 24, 1989 to July 28, 1989. This was a full month prior to the plaintiff's intentional violation of the program. Dr. Accaoui, therefore, specifically confines his diagnosis of plaintiff to the time she spent under his care. He was unable to provide any information regarding plaintiff's condition during the months of September and October; the time she was found to have intentionally violated the program. Therefore, Dr. Accaoui does not support plaintiff's claim that she was unable to form the requisite intent to violate the Food Stamp Program.
Accordingly, for the reasons stated herein, this Court is satisfied that the record contains competent evidence to support the hearing officer's decision that plaintiff intentionally violated the Food Stamp Program.
Counsel shall submit the appropriate order for entry.