DECISION
This is an appeal from a final decision rendered by the Rhode Island Department of Human Services ("DHS") . Plaintiff Lisa Messina ("Messina") moves this Court to reverse DHS's decision of January 13, 1995, in which DHS found Messina to be ineligible to receive child-care services through the Pathways Program. Jurisdiction in this Court is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15, as amended.
Facts/Travel
Messina is a single mother who cares for her now five-year-old son. Pursuant to R.I.G.L. § 40-6.2-1 et seq.,
low income families whose support parent works and whose annual income is within 185% of the federal poverty level are eligible for subsidized day-care payments. Prior to September of 1994, Messina received low-income child-care subsidies. A required bi-annual review of her eligibility was initiated in September of 1994, at which time the family's income was re-evaluated. During this time Messina worked as a waitress in Newport, Rhode Island. Pursuant to DHS rules, Messina was required to provide her four (4) most recent pay stubs. Messina provided her July and August pay stubs. With this information, DHS determined Messina's annual income to be $12,400.44. DHS then added $5,200.00, Messina's anticipated child-support payments, to create a total of $17,600.44 in financial resources available to her. This figure made Messina financially ineligible for subsidized day care.
On September 6, 1994, DHS sent Messina her notice terminating her subsidized day care on the grounds that her projected annual income made her financially ineligible. Messina promptly appealed, arguing that her income varied seasonally.
Although DHS policy requires only the evaluation of four (4) pay stubs, in an effort to enable Messina to keep her child care benefits, DHS asked Messina to present four (4) additional pay stubs. Messina complied by providing September and October pay stubs, although in an untimely manner, to DHS. Averaging this additional financial information still kept Messina over the financial limit to be eligible for subsidized child-care.
An agency hearing was held at which Messina testified that her 1993 income, as reported to the IRS, was $9985 and that she estimated her 1994 income to be comparable to that of 1993. Messina also provided her most recent pay stub of November 22, 1994, which showed year-to-day earnings to be $5530.00 in tips and $2724.08 in wages. Messina argued that this figure was well below DHS's calculation of Messina's annual earnings.
The facts not being in dispute, the only issue at the hearing was the proper methodology for determining Messina's income. Messina argued that analyzing income based on four pay stubs did not accurately reflect Messina's annual earnings due to the seasonal fluctuations of her profession and location.
In the final decision issued January 13, 1995, DHS rejected Messina's argument. DHS acknowledged in its decision that its regulations are aimed at obtaining a "representative" average of the family's income. DHS regulation § 0540.40, titled "Redetermination," provides that families receiving subsidized day-care payments be redetermined at least every six (6) months. Consequently, DHS determined that its method of computing an applicant's financial eligibility was appropriate. Messina appeals DHS's final decision to this Court arguing that (1) DHS's computation of financial eligibility bears no relation to her actual annual earnings and is arbitrary and capricious; (2) DHS's decision is contrary to the intent of the legislation to provide low-income families with subsidized day care and (3) DHS's policy to refer to four (4) weeks of pay or a maximum of (8) weeks, without flexibility to determine income, is arbitrary and capricious.
Standard of Review
The review of a decision of the Department of Human Services by this Court controlled by R.I.G.L. § 42-35-15(g) provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
DHS Policy Manual § 0540 sets forth the method by which the income of an applicant is established. It states in pertinent part
. . .
 In determining the amount of earnings of an employed applicant, the four (4) most recent weekly pay stubs, or if applicable, the previous two (2) biweekly pay stubs are averaged. If the four (4) most recent pay stubs are not indicative of the parent's earnings, the previous four (4) pay stubs or, if applicable, the previous two (2) biweekly pay stubs may be utilized. When a parent has just started employment, income is anticipated based on the expected hours times the hourly pay rate. The calculation of income is based on the knowledge and reasonable, expectation of what income will exist during the period of authorization. . . . (Emphasis added.)
In the case at bar, DHS properly followed this policy. The intent of the policy is not to penalize someone who may have earned more at an earlier time, but whose circumstances had changed and currently was in the need for child-care subsidies. DHS policy correctly reflects the legislative intent to look to the applicant's current situation and evaluate the applicant based on current income, rather than solely on the applicant's earnings history.
The calculation made, based on four (4) weekly paychecks, is effective only for the period of authorization, which is a maximum of six (6) months.[1] Once it was determined that Messina would not qualify for child-care benefits, even taking into consideration her September and October paychecks, she was encouraged to reapply at a later date,[2] as set out in the DHS policy manual.
It is evident from the record, which includes, among other evidence, DHS' ten (10) page decision, the hearing transcript as well as copies of Messina's paycheck stubs, that DHS had an accurate estimate of Messina's income at the time of her application. There is no dispute that this estimate exceeded the income standard necessary to warrant receiving the requested benefits.
DHS policy could not accommodate Messina in her application for continuing child-care benefits at the time of her application. Consequently, this Court finds that DHS's formula for the determination of a family's current income for low-income child-care benefits is consistent to what the Legislature intended in drafting the statute. The policy as enunciated in DHS's regulations is not erroneous nor did it exceed DHS's statutory authority. Messina has presented no credible evidence that the policy, as applied to her, was affected by error of law or is arbitrary or capricious.
After a review of the entire record, this Court finds the January 13, 1995 decision by DHS denying Messina low-income child-care benefits pursuant to DHS policy is supported by reliable, probative, and substantial evidence. Accordingly, the agency decision denying benefits is upheld.
Counsel shall submit an appropriate order.
[1] "Eligibility for the Low Income Child Care Program must be redetermined at least every six (6) months except for Non-AFDC Teen Parents whose cases can be authorized for up to 10 months in order to coincide with the school year. For persons employed in temporary and/or short-term positions, who are paid on a commission basis, or for whom changes are anticipated more frequent redetermination may be necessary."
[2] ". . . I conclude that if the appellant experiences a reduction in her income, she can reapply for low-income child care benefits using an average of her last four pay stubs from her reduced employment. . . ." (Denial decision 1/13/95 at page 9).