DECISION
This is an appeal from a decision of the Coastal Resource Management Council (hereinafter "CRMC"). Robert Andreozzi ("Plaintiff") seeks a reversal of the CRMC's denial of an application for a residential dock. Jurisdiction in this Court is pursuant to R.I.G.L. § 42-35-15.
On May 17, 1990, pursuant to Coastal Resource Management Procedure, ("CRMP"), the Plaintiff filed with the CRMC an application to construct and maintain a residential ramp, pier and floating dock to extend from his property in Barrington, Rhode Island, 285 feet seaward into the Warren River, also known as Smith Cove. Hearings concerning the application were held by the CRMC on March 8 and April 13, 1993. At the hearings, evidence was submitted by the Plaintiff, the CRMC, other state agencies and other interested parties, all of which was incorporated into the record. After review, the CRMC concluded that Plaintiff's proposed boat facility would have an adverse effect upon the marsh area and therefore denied the application.
Standard of Review
The review of a decision of the CRMC by this Court is controlled by R.I.G.L. § 42-35-15(g) which provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswellv. George Sherman Sand Gravel Co., 120 R.I. 1981,424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458.
THE CRMC DECISION
Plaintiff argues that CRMC's decision is wrong and puts forth two alternative arguments. The Plaintiff contends that the CRMP does not apply to his dock since the structure existed prior to the promulgation of CRMC and CRMP. In the alternative, assuming the CRMP does apply, Plaintiff argues that the Laus v. CRMC
decision is clear that specific CRMP provisions will not apply to the extent that they require the owner to obtain a "new" assent.
The CRMC was established by the Legislature to regulate the use of land located near coastal waters. See R.I.G.L. § 46-23. In meeting this objective, the CRMC has been given the authority to develop policies, programs and regulations that pertain to coastal areas. R.I.G.L. § 46-23-6. Under § 46-23-6(B), the jurisdiction of the CRMC is limited to that "necessary to carry out effective resource management programs." The CRMC has authority to
 approve, modify, set conditions for, or reject the design, location, construction, alteration, and operation of specified activities or land uses when these are related to a water area under the agency's jurisdiction, regardless of their actual location. § 46-23-6(B).
Pursuant to this statute, the CRMC has authority over "specified activities or land uses" only when "there is a reasonable probability of conflict with a plan or program for resource management or damage to the coastal environment." Id.
The above passages demonstrate that Plaintiff's contention that the CRMC lacks jurisdiction because a dock existed on Plaintiff's property prior to the formation of the CRMC is meritless. Smith Cove has been determined to be a "Type 1" water by the CRMC. This determination is based upon the fact that there are extensive salt marsh complexes associated within the area with little disturbances to the area. In order to protect the wildlife, plant habitat, natural shoreline and water quality, structural alterations in the tidal water directly adjacent to these features are severely restricted or prohibited. See CRMP § 200.1 et seq.
Both parties do not dispute that Smith Cove is rightfully designated as a Type 1 water. The evidence clearly demonstrates the application to build the proposed dock is in the form of a new construction to which Plaintiff was required to request and obtain a special exception (See CRMP § 130). Docks are specifically prohibited from Type 1 waters. CRMP 300.4(D) (1). Plaintiff's own testimony supports the CRMC's finding that no viable dock was in existence at the time of Plaintiff's application. Plaintiff testified that he drags his boat through the surrounding marsh and plant life to the water. All that remained of the previous dock in 1990 was scattered pilings.[1]
Therefore, pursuant to CRMP 300.4(B)(6) the CRMC has jurisdiction and Plaintiff must obtain council assent to construct the dock.
The CRMC also possesses jurisdiction over appellant's land pursuant to CRMP § 210.3(c). This section prohibits "all alterations to salt marshes and contiguous freshwater or brackish wetlands abutting Type 1 waters." CRMP § 210.3(c) (3). The CRMP does not exclude pre-existing or formally existing structures. Consequently, this Court is satisfied that the CRMC possesses the requisite jurisdiction over Plaintiff's land and the proposed dock.
In Plaintiff's second argument, he relies on the Superior Court rescript Laus v. CRMC, Slip. Op., J. Gibney, May 30, 1989, PC 86-3523. As a preliminary matter, only Supreme Court decisions constitute mandatory precedent and controlling authority. This aside, the Court will briefly address Plaintiff's contentions as they regard Laus. Although the facts in Laus
somewhat parallel the facts presented by the plaintiff, the case is not relevant to this proceeding because (1), the operative provisions of the CRMP were amended after the Laus decision in 1989 and before plaintiff filed this action in 1990 and (2) inLaus the CRMC determined that the petitioner had filed a request to reconstruct a dock not an action to rebuild a dock. Consequently, the CRMC relied on a different section of the CRMP in Laus, namely CRMP § 300.14(B) (4) unlike in the instant case in which the CRMC relied on CRMP § 300.14 (B) (5). Prior to theLaus decision, CRMP § 300.14(B)(5) read as follows:
 5. Many structures under Council jurisdiction predate the Council and were not permitted by Council Assent when originally constructed. Persons proposing to maintain or repair activities on such structures shall inform the Council in writing of the work proposed. The Council's executive director shall determine what standards of this Program apply or whether a Council Assent is required.
CRMP Section 300.14(B)(5) (1983 edition).
After Laus, the CRMC amendment made it clearer that the Council's Executive Director would determine whether a maintenance certificate, a Counsel Assent (permit), or a requirement to update an existing dock was needed:
 5. Many structures under Council jurisdiction predate the Council and were not permitted by Council Assent when originally constructed. Persons proposing to maintain or repair activities on such structures shall be required to obtain a Certification of Maintenance, meet relevant standards of this program, or obtain a Council Assent, as determined by he Council's Executive Director.
CRMP Section 300.14(B)(5) (1990 Ed.) attached hereto as Exhibit B.
In the case at bar, the CRMC Executive Director employing § 300.14(B)(5) made the determination that a Counsel Assent was required because the dock which had existed, no longer existed in 1990 when the Plaintiff filed his petition. Consequently, the CRMC determined that § 300.14(B)(4) did not apply the Plaintiff's application as it did in Laus application.
The full Council considered Plaintiff's application as an application to built a residential pier in Type 1 waters which is a prohibited activity in Type 1 waters. Therefore, the CRMP requires that the Plaintiff obtain a special exception pursuant to CRMP § 130. The Council denied Plaintiff's request for a special exception. Because the proposed dock is neither associated with the public infrastructure nor is it a water dependent activity that would generate substantial economic gain to the state, the full Council found that Plaintiff did not meet the requirements as set forth in § 130. This decision is adequately supported by the evidence in the record.
After review of the entire record, this Court is satisfied that the CRMC's decision was supported by the evidence in the record, most notably the finding that the pre-existing dock was not in existence in 1990 at the time of Plaintiff's application, and that the rights of the appellant have not been thereby prejudiced. The CRMC properly exercised its jurisdiction pursuant to § 46-23-6(B) in denying Plaintiff's application to construct a residential dock.
The decision of the CRMC is hereby affirmed. Counsel shall prepare the appropriate order.
[1] CRMP 300.4(B)(6) states: "Repair or reconstruction of all structures that are physically destroyed 50% or more by wind, storm surge, waves or other coastal processes shall require New Council Assent."